IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. WILLIAMS, JR.

     Plaintiff,                    No. CIV S-10-0423 GEB GGH P

    vs.

IRA BOOK, et al.,                FINDINGS AND RECOMMENDATIONS

     Defendants.

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), filed on December 8, 2010, to which plaintiff filed an opposition, after which defendants filed a reply.

Plaintiff's Allegations

        Plaintiff claims that defendants Ira Book, Jewish chaplain at California State Prison-Sacramento (CSP-SAC); Marc Elia, CSP-SAC Community Partnership Manager; CSP-SAC Warden James Walker and Chief of Inmate Appeals N. Grannis deprived him of his First Amendment right to the free exercise of his Muslim religion (which he denominates "Qurancy") by denying him access to the Jewish kosher diet. Complaint, pp. 1-8. Defendant Book denied

1

1  plaintiff's request to take part in the Jewish diet program on March 4, 2008. Id. at 4 & Exhibit

2  (Exh.) A. On May 20, 2008, defendant Elia denied plaintiff's March 21, 2008 appeal of

3  defendant Book's denial of access to a kosher diet. Id. & Exhs. B & C. On July 10, 2008,

4  defendant Walker denied plaintiff's June 5, 2008, second level appeal. Id. at 5 & Exhs. B & D.

5  Plaintiff's July 20, 2008 appeal was denied at the third-level, by a C. Hall on defendant Grannis'

6  behalf, on November 23, 2008. Id. & Exhs. B & E.

7  Thereafter, on December 23, 2008, plaintiff filed a state habeas corpus petition,

8  challenging the denial of his access to the kosher diet program, seeking injunctive and

9  declaratory relief. Complaint, pp. 5-6 & Exh. F. Ultimately, following, inter alia, an evidentiary

10  hearing, the state superior court judge, on January 19, 2010, ordered the California Department of

11  Corrections and Rehabilitation (CDCR) to provide plaintiff the kosher diet available for Jewish

12  inmates until such time as the to-be-implemented religious diet program became available to him

13  or the court issued a further order otherwise. Id., at 5-6 & Exh. K, pp. 135-137. The CDCR

14  complied with the order as of January 28, 2010, and plaintiff has been receiving the kosher diet

15  but he fears the state court judge might eventually determine his claim is moot. Id. at 7. Plaintiff

16  seeks money, including punitive damages, as well as injunctive relief. Id. at 7-8.

17  Motion to Dismiss

18  Defendants move for dismissal on the grounds, under Fed. R. Civ. P. 12(b)(6),

19  that: 1) plaintiff failed to state a claim upon which relief can be granted and 2) the facts alleged in

20  the complaint show defendants are entitled to qualified immunity. MTD, pp. 1-10.

21  *Legal Standard for Motion to Dismiss*

22  In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

23  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

24  it must contain factual allegations sufficient to "raise a right to relief above the speculative

25  level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The

26  pleading must contain something more...than...a statement of facts that merely creates a suspicion

[of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*No RLUIPA Claim*

While in combing through plaintiff's attached exhibits, the court can locate a couple of references to the Religious Land Use and Institutionalized Persons Act (RLUIPA) (i.e., in his inmate appeals and in his habeas petition to the state superior court at Exh. B, p. 13, Exh. F., p. 33), plaintiff makes his claim before this court expressly under the First Amendment's Free Exercise Clause and does not set forth his claim with any reference to the Religious Land Use and Institutionalized Persons Act (RLUIPA) anywhere within the body of the complaint.[1] Because it is evident that plaintiff was aware of the RLUIPA statute, the undersigned is left to infer that plaintiff made a conscious decision to proceed solely under the First Amendment Free Exercise Clause.[2]

---

[1] Generally, the Turner test is interpreted as imposing less restrictions than does RLUIPA, 42 U.S.C. § 2000cc-1(a), on prison officials' ability to implement policies at odds with a professed religious belief. Warsoldier v. Woodford, 418 F.3d 989, 997-998 (9th Cir. 2005). RLUIPA prohibits government imposition of "a substantial burden on the religious exercise of a person ... confined to an institution..." unless the government can show that even the burden arising from "a rule of general applicability" furthers "a compelling governmental interest" and "is the least restrictive means" of doing so. 42 U.S.C. § 2000cc-1(a)(1) & (2).

[2] However, even if plaintiff had made a claim under RLUIPA, this court finds that it would be to no avail. The Supreme Court has recently ruled that sovereign immunity bars claims for money damages in a private cause of action under RLUIPA against state officials in their official capacities. Sossamon v. Texas, __ U.S.__, 131 S. Ct. 1651 (Apr. 20, 2011). As to claims for money damages against state actors (or other parties) in their individual capacities, while a Ninth Circuit panel has recently noted that the Ninth Circuit has yet to rule on this question "in a precedential opinion," the same panel also observed that "[t]he Fifth, Seventh and Eleventh Circuits have held that RLUIPA does not provide an action for damages for individual capacity claims." Florer v. Congregation Pidyon Shevuyim, N.A., __ F.3d__, 2011 WL 1441879 * 8 n. 3 (9th Cir. Apr. 15, 2011), citing Sossamon v. Lone Star State of Tex., 560 F.3d 316, 327 & n. 23 (5th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 889 (7th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272-75 (11th Cir. 2007). See also, Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009). These Circuits concluded that Congress enacted RLUIPA pursuant to the Spending Clause and did not indicate with sufficient clarity an intent to condition the states' receipt of federal funds on the creation of an individual capacity action for damages; moreover, a contrary reading of the statute would raise serious constitutional concerns about the extent of Congress's authority under the Spending Clause. See Rendelman, 569 F.3d at 187-89; Nelson, 570 F.3d at 887-89; Sossamon, 560 F.3d at 327-29; Smith, 502 F.3d at 1271-75. Although not addressing the issue, the Ninth Circuit has issued unpublished decisions that, by affirming defendants' entitlement to qualified immunity, implicitly assume the existence of an individual capacity RLUIPA claim for damages. See Campbell v. Alameida, 295 Fed. Appx. 130, 131 (9th Cir.

*Free Exercise*

Inmates retain a right to the free exercise of their religion in prison. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). They are also entitled to "receive diets consistent with their religious scruples." Michael v. Andrews, 2005 WL 2008997 *8 (E.D. Cal. 2005), quoting Kahane v. Carlson, 527 F.2d 492, 495 (2nd Cir. 1975.)

As the undersigned has set forth elsewhere:

> [w]hile inmates retain their First Amendment right to the free exercise of religion, a regulation impinging on an inmate's constitutional rights passes muster so long as it is reasonably related to a legitimate penological interest. *Henderson v. Terhune*, 379 F.3d 709, 712 (9th Cir.2004), citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987) and *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). The *Turner* test includes four factors to determine if a prison regulation violates a prisoner's constitutional rights. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and the governmental objective itself must be a legitimate and neutral one. A second consideration is whether alternative means of exercising the right on which the regulation impinges remains open to prison inmates. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Allen v.*

/////
/////

---

2008); Von Staich v. Hamlet, 2007 WL 3001726, at *2 (9th Cir. 2007). However, the Ninth Circuit has upheld the constitutionality of RLUIPA as an enactment under the Spending Clause. See Mayweathers v. Newland, 314 F.3d 1062, 1066-67 (9th Cir. 2002). Thus, this court adopts the reasoning of the Fourth, Fifth, Seventh, and Eleventh Circuits in the above cases and concludes that plaintiff cannot assert a RLUIPA claim for damages against defendants in their individual capacities. See Rupe v. Cate, 688 F.Supp.2d 1035, 1046 (E.D. Cal. 2010); Harris v. Schriro, 652 F.Supp.2d 1024, 1028-30 (D. Ariz., Aug.11, 2009) (dismissing individual capacity claims for damages under RLUIPA based on out-of-circuit authority); Pogue v. Woodford, 2009 WL 2777768, *9 (E.D. Cal., August 26, 2009); but see Guru Nanak Sikh Society of Yuba City v. County of Sutter, 326 F. Supp.2d 1140, 1162 (E.D. Cal. 2003) (court noted that the recovery of damages under RLUIPA is an open question and only granted plaintiff nominal damages of one dollar against each defendant); Sokolsky v. Voss, 2009 WL 2230871, *5-6 (E.D. Cal., July 24, 2009) (court found on a motion to dismiss that defendants in their individual capacities were not entitled to qualified immunity regarding a Kosher food claim). Therefore, any claims by plaintiff under RLUIPA for damages against defendants in their individual capacities would not be found cognizable. Finally, any claim for prospective injunctive relief in this instance would be no less moot under RLUIPA as under the First Amendment.

5

*Toombs*, 827 F.2d 563, 567 (9th Cir.1987) (citing *Turner*, 482 U.S. at 89-91); see also, *Malik v. Brown III*, 71 F.3d 724, 728-729 (9th Cir.1995).

Pogue v. Woodford, 2009 WL 2777768 *14 (E.D. Cal. 2009).

In Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008), the Ninth Circuit, applying the Turner factors, reversed the entry of summary judgment for defendants on plaintiff's claim, inter alia, that the denial of his access to a kosher meat diet violated his right to the free exercise of his religion, and remanded to the district court due to insufficient findings as to the third and fourth Turner factors. 514 F.3d at 885-889. The Court of Appeals observed also that, although the plaintiff, Shakur, had conceded that as a Muslim he was not required to eat halal meat, the district court had been remiss in failing to consider plaintiff's claim that an alternative vegetarian diet caused him gastrointestinal distress, substantially burdening his religious activities and compelling him to find an alternative source of protein consistent with his religion. Id., 514 F.3d at 885. Instead of finding that the claim regarding his physical distress implicated medical, not religious, concerns as did the district court, the Court of Appeals found that the prison's refusal to provide him with such a diet in the face of Shakur's sincere belief that consuming a kosher meat diet was a personal requirement for him to "maintain his spirituality" did, indeed, implicate the Free Exercise Clause, at least as a threshold matter. Id. In remanding the case, the Ninth Circuit faulted the district court for failing to actually balance the four Turner factors; instead, that district court had relied on other federal court cases (citing a Massachusetts district court case and a Third Circuit case) wherein it had been found that the refusal of a prison to provide a halal diet for inmates "was rationally related to legitimate penological interests." Id. In conducting its own Turner analysis, the Ninth Circuit determined that the first factor weighed slightly in the defendants favor, inasmuch as it could not be said that "no rational nexus" existed between the prison's "dietary policies and its legitimate administrative and budgetary concerns." Id., at 886. And, in light of alternative means by which Shakur could practice his religion, in the form of, for example, participation in significant religious rituals, the second factor was found to

weigh in defendants' favor.  Id.  However, as noted, the third and fourth factors could not be weighed given a lack of evidence in the record.  Id., at 886-887.

In this instance, defendants contend that plaintiff has not framed a First Amendment Free Exercise claim because defendants' denial of his access to a kosher diet did not impinge on the exercise of his practice of Islam.  MTD, p. 5.  This is so, they argue, because plaintiff set forth no facts showing that the denial of kosher food interfered with his adherence to the Quran, inasmuch as plaintiff conceded that meals other than kosher meals could satisfy his religious dietary restrictions.  Id., citing Complaint, Exh. A.  Defendants maintain that plaintiff's religious diet request form shows he had the alternative of selecting a vegetarian diet, that he never claimed that he had to eat meat to comply with the tenets of the Quran, *and an exhibit attached to his complaint,[3] the declaration of Chaplain Fardan*, employed as a Muslim chaplain at CSP-Sacramento, states that the Quran neither requires Muslims to eat meat, nor prohibits vegetarianism.  Id., at 5-6, Complaint, Exh. A & Exh. H, pp. 84-86, Fardan Dec.  Nor, assert the defendants, has plaintiff alleged facts to show a vegetarian meal is not an acceptable option; i.e., he does not claim that a vegetarian diet would put him at medical risk or would deprive him of necessary nutrition.  Id., at 6.

Plaintiff counters that defendants were informed that in accordance with the Quran, "kosher food is among the lawful nourishments that plaintiff 'must' eat to exercise his religion." Opposition (Opp.), p. 7, citing Complaint, Exh. B.  He maintains that in rejecting his request for a kosher diet, defendants did not dispute the validity of his request but simply asserted, under color of law, that Muslim inmates were not eligible for a kosher diet .  Id., Exhs. A through E.  Plaintiff contends that Muslims are required by the Quran to eat halal food, which includes kosher food; that Muslims do not have the authority to restrict themselves from the consumption of halal meat and therefore are restricted with regard to the practice of

---

[3] The declaration is part of the respondent's response to the state court's order to show cause why plaintiff, as petitioner, should not be granted a kosher diet.  Complaint, Exh. G.

vegetarianism; and that defendants could have granted his request for Kosher food but chose not to, and did so under color of law. Id., at 7-8, Complaint, Exhs. A through E & I. In his initial request for kosher food, plaintiff states flatly that his religious dietary needs cannot be met by following a vegetarian diet. Complaint, Exh. A.

In their reply, defendants maintain that plaintiff's statements regarding the proscription of vegetarianism are conclusory and unwarranted by the facts. Reply, pp. 2-3. Defendants point to another exhibit to the complaint, Exh. L, wherein plaintiff's December 2008 religious vegetarian diet request undermines his request that only a diet consisting of halal or kosher meat accords with the Quran. Id. However, this exhibit is itself undermined by the fact in an earlier form, his request to prison officials for a kosher diet had been denied and that within the same month, December of 2008, when the vegetarian diet request was apparently directed to prison officials (apparently the only avenue open to plaintiff), plaintiff filed a state habeas corpus petition seeking access to the prison kosher diet program, which application was ultimately granted. Complaint, Exhs. F & K.

Defendants' contention that plaintiff fails to frame a First Amendment claim because he does not specifically allege facts sufficient to show that his right to the free exercise of his religion was impinged, or infringed upon, because he had the alternative of a vegetarian diet that was in compliance with the Quran is not fully demonstrated by reference to plaintiff's exhibits. Moreover, as plaintiff maintains, in denying the plaintiff a kosher diet, defendants simply found him ineligible for a kosher diet, without more. Nor do defendants apply the <u>Turner</u> factors to justify their refusal to allow plaintiff as a Muslim access to the kosher diet program. <u>Shakur v. Schriro</u>, 514 F.3d at 885-86. Therefore, this court finds that plaintiff has framed a cognizable First Amendment Free Exercise claim.

/////

/////

/////

*Qualified Immunity*

Defendants contend they are entitled to qualified immunity as to plaintiff's claims of a deprivation of his First Amendment right to the free exercise of religion when he was denied access to the Jewish kosher diet program by defendants. MTD, pp. 8-11.

In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's (or in this case, chaplain and prison officials) actions violated a constitutional right and (2) whether a reasonable officer (chaplain/prison official) could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987). Although the Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Supreme Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).

The undersigned quotes a little more extensively from a case that included an analogous claim (from which defendants also quoted a portion in the MTD at p. 9):

> The law regarding the need to modify diets for religious purposes has been well established for a number of years. Indeed, [CDCR] has recognized this in implementing a religious vegetarian diet and kosher diet.
>
> However, the claim here is more nuanced. Plaintiff was not simply told to eat what was placed before him; he was told that he could have a religious vegetarian diet which would not contradict his religious tenets. There is no dispute in this case that the Muslim religion does not *require* the eating of certain foods; it simply requires that some foods be processed in a particular way, and pork products are off limit no matter how processed. The court finds that the nuanced claim qualifies for qualified immunity. The claim here is identical to that of Thompson v. Williams, 320 Fed. Appx. 678 (9th Cir.2009) (finding that reasonable prison officials would not have known that a substitute ovo-lacto diet would not have met constitutional muster when these officials denied a halal/kosher diet.) While not precedent, the case is persuasive. None of the defendants sued in their individual capacity are liable for damages

on the diet claim.

Pogue v. Woodford, 2009 WL 2777768 *15-*16 [emphasis in original].[4]

Plaintiff's allegations are not that defendants denied him access to any religious diet, i.e., he could have accessed the religious vegetarian diet. Nor does the entirety of his complaint make it clear that a meat diet, halal or kosher, is absolutely required by his religion, or that a reasonable prison official would have known that precluding him from the kosher meat program would have violated plaintiff's First Amendment rights. Therefore, the court finds that defendants are entitled to qualified immunity on plaintiff's claims for money damages based on a violation of his First Amendment free exercise rights.

*Prospective Injunctive Relief*

As to plaintiff's claim for injunctive relief, defendants are correct that this claim has evidently been rendered moot by the state superior court decision ordering plaintiff to have access to the kosher diet. MTD, pp. 6-7. The state court judge appears to have made quite clear that CDCR (in an order therein limited to plaintiff, as petitioner) is to provide plaintiff with a kosher diet until such time as a halal diet program is available. Complaint, Exh. K, p. 136.[5] It appears that plaintiff's claim for injunctive relief has not presented a live controversy from the outset, inasmuch as the state court order issued on January 19, 2010, and plaintiff filed this complaint on February 18, 2010. In order for a case to be adjudicated in federal court, "'an actual controversy must be extant at all stages of review...'" Arizonans for Official English v. Arizona, 520 U.S. 43, 66, 117 S, Ct. 1055, 1068 (1997)[internal citations omitted]. In this instance, plaintiff did not appear to have a viable claim for prospective injunctive relief from the

---

[4] These Findings and Recommendations were adopted by Order in Woodford v. Pogue, Case No. 2:05-cv-1873 on September 30, 2009.

[5] "It is ORDERED that until the Religious Diet Program becomes available to petitioner or this court issues [any] further order in this matter to provide otherwise, the Department of Corrections and Rehabilitation is directed to allow petitioner to receive the Kosher diet currently available to Jewish inmates."

outset. Plaintiff's concern that the superior court judge may at some point find the order moot is not sound or well-supported but largely speculative. The motion should be granted as to any claim for injunctive relief.

*Conclusion*

As the court has found that defendants are entitled to qualified immunity on plaintiff's claims for money damages for a violation of his First Amendment free exercise rights in having been denied access to the kosher meat diet and that his claim for injunctive relief is moot, the complaint must be dismissed.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' December 8, 2010 (Docket # 23), motion to dismiss the complaint be granted and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/01/2011

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
will0423.mtd

11